UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JESSICA LYN WELCH                                           PLAINTIFF

VS.                              CIVIL ACTION NO. 3:13CV271TSL-JCG

ALL AMERICAN CHECK CASHING,
INC., A MISSISSIPPI CORPORATION                             DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jessica Lyn Welch brought the present action
alleging she was terminated from her employment with All American
Check Cashing Company, Inc. (All American) on account of her
pregnancy, in violation of Title VII of the Civil Rights Act, 42
U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy
Discrimination Act.  The case was tried by a jury beginning May
11, 2015 and ending May 13, 2015, and resulted in a verdict for
All American.  A judgment in accordance with the jury's verdict
was entered on May 13, 2015.  This cause is now before the court
on the motion of Welch for new trial pursuant to Rule 59 of the
Federal Rules of Civil Procedure.  All American has responded to
the motion and the court, having considered the memoranda of
authorities, together with the record in this cause, concludes the
motion is not well taken and should be denied.

Federal Rule of Civil Procedure Rule 59(a) allows a court to
grant a new trial following a trial by jury for "any reason for
which a new trial has heretofore been granted in an action at law

in federal court." Fed. R. Civ. P. 59(a). Although the rule does not specify what grounds are necessary to support such a decision, a new trial may be appropriate if the court finds "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Jones v. Ruiz, 478 Fed. App'x 834, 835-36 (5th Cir. 2012) (internal quotation marks and citation omitted). See also Morris v. Lee, No. 98-1656, 2001 WL 30199 at * 1 (E.D. La. Jan. 10, 2001) (stating that "Rule 59(a) should not be the avenue to which losing parties run after trial."). The decision on a motion for new trial "is generally within the sound discretion of the trial court." Foradori v. Harris, 523 F.3d 477, 503-04 (5th Cir. 2008) (quoting Shows v. Jamison Bedding, Inc., 671 F.2d 927, 930 (5th Cir. 1982)).

As grounds for her motion for new trial, Welch urges the court committed prejudicial error with respect to a number of matters. Most of her complaints concern the admission of evidence relating to one of her witnesses, Briana Johnson. Welch complains that over her objection and to her unfair prejudice, the court

allowed into evidence the outcome of the recent trial of Johnson's
own claim of pregnancy discrimination against All American,
including the jury verdict form from that trial; she further
objects that the court and defense counsel misstated the finding
of the jury in the Johnson case; and she contends that the court's
instruction to the jury regarding Briana Johnson's case was
unfairly prejudicial.  In a related vein, she also asserts that
the court erred in allowing defendant to call previously
undisclosed witnesses from Briana Johnson's trial, Amanda Hearn
and Laura Faulkner, without providing her sufficient notice and
time to prepare for their testimony.  Lastly, she contends the
court erred in allowing All American to argue in closing, over her
objection, that the absence of Eric McCrossen, her former
supervisor, from the trial was because his testimony would be
adverse to her.  She asserts that this argument by defendant was
unfairly prejudicial to her and warrants granting a new trial.
Applying the above standards to the grounds asserted for her
motion, the court finds plaintiff's request for a new trial to be
unfounded.

    <u>Evidence/Instruction Relating to Briana Johnson</u>

    Briana Johnson is a former employee of All American who was
terminated while pregnant and who filed a lawsuit against All
American charging pregnancy discrimination.  <u>See</u> <u>Briana Johnson v.</u>
<u>All American Check Cashing, Inc.</u>, No. 3:13CV270WHB-RHW (S.D.

3

Miss.).  Johnson's case was recently tried by Judge William Barbour and on April 9, 2015, concluded with a jury verdict for All American.  At the time of Welch's trial, final judgment had been entered on the jury verdict in <u>Johnson</u> and no post-trial motion had yet been filed.  Prior to the commencement of testimony in this case, All American moved the court to exclude Johnson as a witness in this case, insisting that she had no relevant information to offer; at most, she could give anecdotal "me too" evidence that would not be probative of whether Welch was terminated due to pregnancy discrimination.  See <u>Wyvill v. United Cos. Life Ins. Co.</u>, 212 F.3d 296, 305 (5th Cir. 2000) (finding that the district court abused its discretion by not excluding a "parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age discrimination at the hands of the defendant").  In response, Welch argued that the fact that a jury had found against Johnson on her own claim for pregnancy discrimination did not preclude Johnson from testifying in Welch's case both because Johnson's own case was "not over with yet" and because Johnson's proposed testimony was relevant to plaintiff's claim for discrimination, notwithstanding the outcome of Johnson's trial.  In this regard, Welch represented that Johnson would be testifying to certain discriminatory statements allegedly made to her by Nathan Williams, who was both Johnson's and Welch's

manager.  Welch stated that Johnson was not going to testify that she was terminated because she was pregnant.

The court concluded that the fact that a jury had found against Johnson on her claim for pregnancy discrimination did not preclude her from giving relevant testimony on behalf of Welch – which the court understood would relate to alleged discriminatory comments by Williams - and thus denied All American's motion to exclude Johnson's testimony.  In response to an inquiry by All American, the court stated that All American would be entitled on cross examination to develop facts pertinent to any prejudice Johnson might harbor against All American, which could include the fact that she had filed her own lawsuit against the company for pregnancy discrimination and the outcome of that lawsuit.  Welch objected to All American's being allowed to present evidence of the jury's verdict in Johnson's case, contending that such evidence was inadmissible because the jury verdict in <u>Johnson</u> was not yet final.  However, particularly since a final judgment had been rendered on the jury verdict, the court found that Welch's objection to admission of the verdict was not well founded. Specifically, the court ruled that evidence of the verdict would be admissible, to the extent of its relevance, regardless of whether Johnson anticipated filing a post-judgment motion and notwithstanding that the appeal time on the judgment in Johnson's case had not yet run.

As it developed, Johnson's testimony in the trial of this cause was not, in fact, limited to alleged discriminatory comments by Nathan Williams.  Johnson testified in addition that she was fired while she was pregnant, just two weeks after Williams became her supervisor and less than a week after his alleged discriminatory comments; that Williams was the one who fired her; and that he gave her no reason for doing so.  Following an objection by All American that Johnson's testimony was going beyond what had been represented and was getting into the whole Johnson lawsuit and putting All American in the position of having to put on evidence – including two impeachment witnesses – Welch acknowledged that Johnson's testimony had gone further than intended and stated she would proceed no further down that path. Upon resuming examination of Johnson, counsel for Welch asked Johnson who had replaced her following her termination.  In response to an objection by All American, counsel for Welch stated he was "laying the foundation to who replaced the women that Mr. Williams fired in order to show a *prima facie* case...."

As direct examination was concluding, counsel for Welch asked Johnson whether she had filed a lawsuit against All American (since the court had already indicated that the fact and outcome of Johnson's lawsuit would be a proper subject of inquiry on cross-examination and he did not want this information to come as a surprise during questioning by All American).  Johnson responded

that she had filed a lawsuit.  When asked about the current status of the case, Johnson stated, "It's still pending," meaning "[i]t's not over."

As cross examination commenced, All American's counsel immediately questioned Johnson about the outcome of her case:

> Q.  Isn't it true that a jury found less than a month ago that you were not terminated because you were pregnant?

Welch's counsel objected that this was a misstatement of the jury's finding.

> A.  No, they did not find that I was discriminated.  No, they didn't have the evidence.  They didn't find the evidence in ours – in our side in favor.  They ruled --
>
> Q.  But the jury did find that you failed to prove that you had been discriminated on the basis of your pregnancy?
>
> A.  They did not have clear evidence on our side.  They found that y'all were liars and y'all lied on y'all's behalf and they ruled in y'all's favor.

Following an objection by All American to this statement, which the court sustained, All American offered in evidence a copy of the jury verdict form from Johnson's case as an impeachment exhibit and again asked Johnson about the verdict:

> Q.  It says: In returning your verdict, please answer the following question: Has Briana Johnson proved by a preponderance of the evidence that she was terminated because of her pregnancy.  Answer: No.  Do you see that?
>
> A.  I do.
>
> Q.  That is the determination that the jury made.  Is that not correct?

7

> A.   Yes.   We didn't have enough evidence that I could win the case.

Welch contends that a new trial is warranted based on the court's erroneous admission in evidence of the outcome of Johnson's lawsuit, including the jury verdict form itself.

To be entitled to a new trial based on erroneously admitted or excluded evidence, the party seeking a new trial must show the trial court both erred in its decision and that the error adversely influenced the jury's verdict. <u>Munn v. Algee</u>, 924 F.2d 568, 571-73 (5th Cir. 1991).

<u>Outcome of Johnson Trial:</u>   During the trial of this cause, the sole basis for Welch's objection to the admission of evidence of the outcome of Briana Johnson's trial was her contention that the verdict and/or judgment in <u>Johnson</u> was not final.   When the court initially indicated that All American would be permitted to cross-examine Johnson about the outcome of her own trial, Welch's counsel objected, stating:

> Your Honor, I would have to object to that.   There is case law which states that if a judgment is not final, it can't be used against someone.   That's going to be highly prejudicial to Mrs. Welch, especially where if that case is overturned we would then have to come back here and redo this.

No other basis for objection was offered to this evidence at any time during the trial.   In her present motion, Welch continues to maintain on this basis that the court erred by admitting evidence of the Johnson jury verdict, which according to Welch, still is

8

not "final."  She argues that as a result of the court's admission of evidence of the verdict, "the Court will be faced with the situation of the fact that the evidence presented may change at a later date and ... Plaintiff would be unfairly prejudiced as a result."  She adds that evidence of the verdict in Johnson's case should have been excluded under Federal Rule of Evidence 403.  The court addresses these contentions in turn.

Both at trial and in her current motion, the only authority Welch has cited in support of her contention that the jury verdict in Johnson was not "final" and that evidence of the verdict was therefore inadmissible is United States v. Semensohn, 421 F.2d 1206 (2d Cir. 1970).  For a number of reasons, her reliance on Semensohn is misplaced.  Semensohn involved the issue of whether a guilty plea on which the witness had not yet been sentenced constituted a "conviction" within the meaning of Federal Rule of Evidence 609(a), which permits an attack on the credibility of a witness if there is evidence to show "that he has been convicted of a crime."  See Fed. R. Evid. 609(a).  The court found that the guilty plea was not a "conviction," reasoning that the defendant could move to withdraw a guilty plea prior to sentencing, and further because "[i]t is ... settled law that a conviction does not become a final conviction until sentence has been imposed and until the time for an appeal from the judgment has expired."  Id. at 1208.

Welch seems to suggest that just as the conviction in
<u>Semensohn</u> was not yet final, the verdict in Briana Johnson's case
was not yet final and for that reason, should not have been
admitted.  However, this case does not involve any purported
"conviction"; and the court's analysis and ruling in <u>Semensohn</u>
involving what constitutes a criminal "conviction" for purposes of
Rule 609 has no bearing on the issue presented in this case.
Moreover, as the Second Circuit has subsequently noted, the
<u>Semensohn</u> court's holding that a conviction does not become final
until the time for appeal has expired has been rejected by Rule
609(e), which permits use of a conviction for impeachment even
though an appeal is pending, with a proviso that evidence of the
pendency of the appeal is also admissible.  <u>U.S. v. Vanderbosch</u>,
610 F.2d 95, 97 (2d Cir. 1979) (citing Fed. R. Evid. 609(e)).
Also, in <u>Vanderbosch</u>, the court held that unlike a guilty plea, a
*jury verdict* of guilty was a "conviction" for purposes of Rule
609, even though the verdict had not been reduced to judgment,
sentence had not been imposed, and motions for a new trial and for
acquittal were still pending for decision.  <u>Id</u>. The court
distinguished a jury verdict from a guilty plea, stating, "A
jury's finding of guilt, on the other hand, cannot be withdrawn by
the defendant.  Moreover, it is rarely overturned, and entry of
judgment is usually nothing more than a ministerial act.  A jury
verdict thus contains the certainty and finality which the

10

<u>Semensohn</u> court found lacking in a guilty plea." <u>Id</u>. (internal
quotation marks and citation omitted).  <u>See also</u> <u>U.S. v. Klein</u>,
560 F.2d 1236, 1241 (5th Cir. 1977), <u>cert. denied</u>, 434 U.S. 1073,
98 S. Ct. 1259, 55 L. Ed. 2d 777 (1978) (likewise holding that
"[a] jury's verdict of guilty prior to entry of judgment is no
less final than a conviction during the pendency of an appeal.  In
both cases the finding of guilt should be competent as impeachment
evidence subject to an explanation by counsel that the finding may
be set aside at a later date.").  This case, in stark contrast to
<u>Semensohn</u>, involves admissibility as impeachment evidence of a
civil jury verdict on which a final judgment had been entered.

In the context of determining and applying deadlines for
filing post-trial motions for costs and attorney's fees, and for
filing notices of appeal, courts, including the Fifth Circuit,
have consistently held that the filing of a post-trial motion for
relief from judgment, including a Rule 59 motion for new trial,
suspends the finality of the district court's judgment.  <u>See</u>,
<u>e.g.</u>, <u>Stone v. I.N.S.</u>, 514 U.S. 386, 402-03, 115 S. Ct. 1537, 131
L.Ed. 2d 465 (1995) ("The majority of post-trial motions, such as
Rule 59, render the underlying judgment nonfinal both when filed
before an appeal is taken (thus tolling the time for taking an
appeal), and when filed after the notice of appeal (thus divesting
the appellate court of jurisdiction)"); <u>Ellison v. Conoco, Inc.</u>,
950 F.2d 1196, 1200 (5th Cir. 1992) (explaining that former version

11

of Rule 4(a)(2) of the Federal Rules of Appellate Procedure governing timely filing of notice of appeal "recognizes an exception in cases in which timely filing of any of several specified post-trial motions (such as a motion for JNOV) has destroyed the finality of the judgment").[1]   Of course, no post-trial motion had been filed in <u>Johnson</u> at the time this case came to trial.

In any event, though, in the more pertinent context of determining the finality of a judgment for purposes of according it preclusive effect, courts, including the Fifth Circuit, have uniformly held that the finality of a judgment is not affected by the pendency of an appeal.  <u>See</u> <u>Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co. of Vidalia, Ga.</u>, 510 F.2d 272 (5th Cir. 1975) (per curiam) ("A case pending appeal is res judicata

---

[1]    <u>See</u> <u>also</u> <u>Bailey v. Riverside</u>, 414 F.3d 1023, 1025 (9th Cir. 2005) (time for filing post-trial motion for attorney's fees is tolled because post-trial motions "operate to suspend the finality of the district court's judgment"); <u>Members First Fed. Credit Union v. Members First Credit Union of Fla.</u>, 244 F.3d 806, 807 (11th Cir. 2001) ("because the finality of judgment is effectively postponed by the timely filing of a motion under Rule 59," the deadline for filing a motion for attorneys' fees is tolled until the post-judgment motion is resolved); <u>Weyant v. Okst</u>, 198 F.3d 311, 314 (2d Cir. 1999) ("because the finality of judgment is negated by the timely filing of a motion under Rule ... 59," a motion for attorney's fees is timely if filed no later than 14 days after the resolution of such 59 motion); <u>Munyon v. Ross</u>, No. 94-3067, 1994 WL 512427, at *1 (10th Cir. 1994) ("[c]ertain post-trial motions" – including Rule 59 motion for new trial – "suspend the finality of the judgment" and thus extend the time for filing a notice of appeal uner Fed. R. App. P. 4(a)).

... unless and until reversed on appeal."), <u>cert. denied</u>, 423 U.S. 864, 96 s. Ct. 125, 46 L. Ed. 2d 94 (1975); <u>see also</u> <u>Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.</u>, 170 F.3d 1373, 1380-81 (Fed. Cir. 1999) ("[t]he vast weight of case law" supports according a judgment collateral estoppel effect while pending on appeal); <u>Williams v. Commissioner</u>, 1 F.3d 502, 504 (7th Cir. 1993) ("[A] judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies."); <u>Hawkins v. Risley</u>, 984 F.2d 321, 324 (9th Cir. 1993) ("The preclusive effect of a federal judgment cannot be suspended simply by taking an appeal."); <u>Erebia v. Chrysler Plastics Prods. Corp.</u>, 891 F.2d 1212, 1215 n.1, (6th Cir. 1989) ("The established rule in the federal courts is that a final judgment retains all of its preclusive effect pending appeal."); 18A Charles Alan Wright, <em>et al.</em>, <u>Fed. Prac. & Proc.</u> § 4433 (2d. ed. 2015) (stating that "a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo").  Moreover, while there are few cases addressing the effect of post-trial motions on a judgment for purposes of claim or issue preclusion,[2] "the authorities and

---

[2]     As the court noted in <u>Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.</u>, cases addressing this issue are "relatively rare" because "post-trial motions are typically ruled upon shortly after judgment is entered."  170 F.3d 1373 (Fed. Cir. 1999)

modicum of case law that have done so are nearly uniform in concluding that the fact that post-trial motions are pending does not affect the finality of a judgment and thus does not prevent its preclusive effect." Pharmacia & Upjohn Co., 170 F.3d at 1381 (citing Hubbell v. United States, 171 U.S. 203, 210, 18 S. Ct. 828, 43 L. Ed. 136 (1898) (stating, albeit in dictum, that "[i]ndeed, it may well be doubted whether the pendency of a motion for a new trial would interfere in any way with the operation of the judgment as an estoppel."); Tripati v. Henman, 857 F.2d 1366, 1367 (9th Cir. 1988) ("A pending Rule 59(e) motion similarly does not deprive a judgment of finality for res judicata purposes."); Restatement (Second) of Judgments § 13 cmt. f (1982) ("A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal...."); 18 James Wm. Moore, Moore's Federal Practice § 131.30[2][c] [iv], at 131-100 (3d ed. 1998) ("There seems to be no compelling

---

(citing 18 James Wm. Moore, Moore's Federal Practice §  Moore, § 131.30[3][a], at 131-100 (3d ed. 1998) ("Post-trial motions are usually made and disposed of in a comparatively narrow time frame, so the issue of what impact a possible or pending motion has on the preclusive effect of the judgment is seldom addressed.")).

argument for treating such [post-trial] motions or possible [post-trial] motions any differently than appeals.  Finality should attach for claim preclusion purposes at the time of entry of judgment.")).  See also Fed. Prac. & Proc. § 4432 (noting dictum in Hubbell that preclusion is not defeated by a new trial motion, and opining that "[t]his result may be supported by analogy to the rule that preclusion is not defeated by the pendency of an appeal.  If truly exigent circumstances force resolution of the question, preclusion probably is appropriate.").[3]  It appears the Fifth Circuit is in accord.   In Cycles, Ltd. v. Navistar Financial Corp., 37 F.3d 1088 (5th Cir. 1994), the court stated:

> Judgments are final for purposes of issue preclusion
> when fully litigated, even if not yet appealable.  See
> Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149,
> 1191 (5th Cir. 1982) (holding that a fully litigated, if
> non-final, decision enjoys issue-preclusive effect);
> vacated and remanded on other grounds, 460 U.S. 1007,
> 103 S. Ct. 1245, 75 L. Ed. 2d 476 (1983); reinstated on

---

[3]     It has been said that "[i]n most circumstances ... it
would be far wiser to avoid the matter by postponing the later
proceedings for the relatively brief period typically required to
await disposition of a new trial motion[,]" but "[i]f truly
exigent circumstances force resolution of the question, preclusion
probably is appropriate."  18A Charles Alan Wright, et al., Fed.
Prac. & Proc. § 4432 (2d ed. 2015).

> For example, the judgment and subsequent motion for new
> trial in the first case might occur during the course of
> a protracted jury trial in the second case and force
> determination by the second court of the issues to be
> tried, the instructions to be given, or the like, before
> the new-trial motion is decided by the first court.

Id.

remand as to this ground, 718 F.2d 725, 728 (5th Cir.1983); reh'g en banc ordered, id. at 730 (vacating opinion for rehearing en banc, which never occurred because parties settled); see also 18 Charles A. Wright et al., Federal Practice and Procedure § 4434, at 321 (1981) (surveying leading cases that consider non-appealable judgments to be final for purposes of issue preclusion); 1B James W. Moore et al., Moore's Federal Practice ¶ 0.416[3.-1] (2d ed. 1993) (endorsing rule that pendency of post-trial motions to change the judgment or set it aside does not suspend issue-preclusive effect of the judgment); Restatement (Second) of Judgments § 13 cmt. f (1982) (pendency of motions to set aside a judgment otherwise final for collateral estoppel purposes or to grant a new trial does not suspend issue-preclusive effect of the judgment).

Cycles, Ltd., 37 F.3d at 1090.

When this case was tried, final judgment had been entered on the jury verdict in Johnson's case, and no post-trial motion had even been filed. The judgment was clearly "final." In the court's opinion, based on the cited authorities, even if there had been a pending post-trial motion for relief from judgment at the time this case came on for trial, the judgment in Johnson would have been accorded preclusive effect, meaning that at the time of the trial herein, the Johnson judgment was conclusive of Johnson's claim that she was the victim of pregnancy discrimination. Accordingly, the court rejects plaintiff's objection that admission of evidence of the outcome of Johnson's case was error because the jury verdict was not yet "final."

Welch next argues that evidence relating to the verdict in Johnson should have been excluded under Federal Rule of Evidence 403, which states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Welch submits that the probative value of evidence of the jury's verdict in the Johnson case was outweighed by danger of unfair prejudice to her.  The jury in this case, she argues, would have found it impossible not to be influenced by the fact that another jury had found in favor of All American in a pregnancy discrimination case involving the same supervisor.  The court is not persuaded.

The court initially ruled that All American was entitled on cross examination of Briana Johnson to present evidence of any bias, which evidence could include the fact that she had sued All American and the outcome of her case.  The Supreme Court has made clear that evidence of a witness's bias is "almost always relevant."  United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984).  The Court in Abel stated:

> Rule 401 defines as "relevant evidence" evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by

applicable rule.  A successful showing of bias on the
part of a witness would have a tendency to make the
facts to which he testified less probable in the eyes of
the jury than it would be without such testimony.
...
Bias is a term used in the "common law of evidence" to
describe the relationship between a party and a witness
which might lead the witness to slant, unconsciously or
otherwise, his testimony in favor of or against a party.
Bias may be induced by a witness' like, dislike, or fear
of a party, or by the witness' self-interest.  Proof of
bias is almost always relevant because the jury, as
finder of fact and weigher of credibility, has
historically been entitled to assess all evidence which
might bear on the accuracy and truth of a witness'
testimony.

Id. at 51, 105 S. Ct. 465.  See also Fed. R. Evid. 611(b)

(providing that court may permit cross-examination on "matters

affecting the witness's credibility"); United States v. Palmer,

536 F.2d 1278, 1282 (9th Cir. 1976) ("The range of evidence that

may be elicited for the purpose of discrediting a witness is very

liberal.  Inquiry is permitted concerning his capacity to

remember, to observe, and to recount, and for the purpose of

testing his sincerity, truthfulness and motives." (citation

omitted)).  "Courts generally are 'liberal' in admitting evidence

of bias because a jury 'must be sufficiently informed of the

underlying relationships, circumstances, and influences operating

on the witness to determine whether a modification of testimony

reasonably could be expected as a probable human reaction.'"  Koch

v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1389 (D. Kan. 1998)

(quoting 4 Jack Weinstein & Margaret Berger, Weinstein's Federal

18

Evidence § 607.04[1] (2d ed. 1997)). See also 4 Weinstein's Federal Evidence § 607.04[3][b] ("[T]he range of evidence that may be elicited for the purpose of establishing bias of a witness is quite broad.") (quoted in Koch). The court has "broad discretion in determining how and why bias may be proved and what collateral evidence is material to that purpose." United States v. Landes, 704 F.2d 152, 153 (5th Cir.), cert. denied, 464 U.S. 856, 104 S. Ct. 176, 78 L. Ed. 2d 158 (1983). At the same time, however, "[u]nder Rule 403, a trial judge has broad discretion to exclude otherwise relevant evidence, even where bias or interest of a witness is involved." Breaux v. Taylor, No. 06-1145, 2010 WL 646107, at *1 (W.D. La. Feb. 22, 2010).

In this case, even if Johnson's testimony had been limited to the alleged discriminatory remarks she claims were made to her by Williams, the fact that Johnson had filed a lawsuit against All American over her termination and that she did not prevail in that lawsuit, would have been relevant to show bias. See Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ., No. 3:11-cv-01407-SI, 2013 WL 5536310, at *5 (D. Or. Oct. 8, 2013) (holding that defendant was entitled to cross examine witness about any lawsuit that she previously filed against the defendant to expose any potential bias). In the court's opinion, even had Johnson's testimony been so limited, admission of evidence of the outcome of her case would not have been more prejudicial than

probative.  However, the fact is, Johnson's testimony was not limited to alleged comments by Williams.  While Johnson may not have claimed explicitly in her testimony on direct examination that she was terminated by All American because of her pregnancy, that was the apparent implication of her testimony.  Johnson testified that Williams knew she was pregnant; that after she asked to be off for a pregnancy related function, he made what she interpreted to be a disparaging remark about pregnancy; and that Williams terminated her employment less than a week later, giving no reason for doing so.  In light of this testimony, All American was certainly entitled to show that Johnson had already sued All American for pregnancy discrimination and lost her case.  Indeed, exclusion of the evidence would have been unfairly prejudicial to All American.[4]

The Jury Verdict Form:  Welch further contends that the admission of the jury verdict form from the Johnson case violated Federal Rule of Evidence 608(b), and was unfairly prejudicial to her.  The court finds no merit in her position.  Rule 608(b) states as follows:

> Specific instances of the conduct of a witness, for the
> purpose of attacking or supporting the witness'
> character for truthfulness, other than conviction of
> crime as provided in rule 609, may not be proved by

---

[4]     The court would note, too, that the jury was clearly instructed by the court that "this case is solely about Jessica Welch's termination."

extrinsic evidence.  They may, however, in the
discretion of the court, if probative of truthfulness or
untruthfulness, be inquired into on cross-examination of
the witness (1) concerning the witness' character for
truthfulness or untruthfulness, or (2) concerning the
character for truthfulness or untruthfulness of another
witness as to which character the witness being
cross-examined has testified.

Fed. R. Evid. 608(b).  The court concludes that it did not err,

much less plainly err, in admitting the jury verdict form for the

limited purpose of challenging Briana Johnson's character for

truthfulness.[5]  Under Rule 608(b), "extrinsic evidence may be

admissible if it tends to show bias in favor of or against a

party."  <u>Bentley v. City of Greenville, Miss.</u>, Civ. Action No.

4:07CV0028-P-A, 2008 WL 2563217, at *1 (N.D. Miss. June 24, 2008)

---

[5]      Notably, while Welch objected to the introduction of
evidence of the outcome of the <u>Johnson</u> trial on the basis that the
judgment was not final, she did not object to introduction of the
jury verdict form itself, on the basis of Rule 608(b) or any other
basis.  Welch claims that because she objected generally to the
introduction of evidence regarding the outcome of Johnson's trial,
it follows that she objected to introduction of the verdict form
itself.  However, Welch's objection to evidence of the outcome of
Johnson's lawsuit based on her contention that the judgment in
<u>Johnson</u> was not final would not have encompassed her present
contention that the verdict form was inadmissible extrinsic
evidence under Rule 608(b).  <u>See</u> Fed. R. Evid. 103(a) ("A party
may claim error in a ruling to admit ... evidence only if the
error affects a substantial right of the party and ...a party, on
the record: (A) timely objects or moves to strike; and (B) <i>states
the specific ground</i>, unless it was apparent from the context[.]")
(emphasis added).  As Welch did not make a proper objection on the
record to admission of the jury verdict form, the court's decision
to admit the form is subject to review only for plain error.  <u>See</u>
Fed. R. Evid. 103(e) (allowing court to "take notice of a plain
error affecting a substantial right, even if the claim of error
was not properly preserved").

(citing <u>U.S. v. Martinez</u>, 962 F.2d 1161, 1165 (5th Cir. 1992));
<u>see also</u> <u>U.S. v. Thorn</u>, 917 F.2d 170, 176 (5th Cir. 1990) ("An
exception to the prohibition against the use of extrinsic evidence
to attack the credibility of a witness exists in cases in which
the evidence tends to show bias or motive for the witness to
testify untruthfully.").

Here, the jury verdict form was proper impeachment evidence.[6]
In addition to implying in her direct testimony that she was
terminated because she was pregnant, Johnson further testified on
direct that her case against All American was "still pending."
She then refused on cross examination to acknowledge that the jury
in her case had found that she had failed to prove that she had
been discriminated against on account of her pregnancy, claiming
that the jury "found that y'all were liars and y'all lied on
y'all's behalf and they ruled in y'all's favor."  Under the
circumstances, All American was entitled to have the jury verdict
form admitted in evidence to refute her testimony on these

---

[6]     Welch asserts that the verdict form was admitted both as
impeachment evidence *and* as direct evidence to show that All
American did not engage in pregnancy discrimination.  That is not
the case.  The evidence was offered and admitted solely as
impeachment evidence.

22

matters.[7]  Plaintiff's motion for a new trial based on admission

on the jury verdict form is therefore rejected.[8]

---

[7]     In support of her objection based on Rule 608(b), Welch
cites a single case, Schneider v. City and County of Denver, 47
Fed. App'x 517 (10th Cir. 2002), which was a retaliation lawsuit in
which the court held that a jury verdict form finding against the
defendant City on a retaliation claim in another case should have
been excluded under Federal Rules of Evidence 403, 404(b) and
608(b).  That case is inapposite.  The court in Schneider found
that since the City's witness had admitted in his testimony that
he was aware that the City had been found to have intentionally
retaliated against another employee, the verdict form from the
earlier case was not admissible as impeachment evidence under Rule
608(b) to refute the employer's claim that it had no policy of
retaliation.  Schneider is not pertinent here because it did not
involve any witness bias and because the verdict form would not
actually have served to impeach any contrary testimony.

[8]     Welch likens the Johnson jury verdict to an EEOC
determination of no probable cause, which she submits would be
inadmissible under Rule 403.  This is plainly an inapt analogy, as
an EEOC determination in a plaintiff's case on the claims made in
that same case is quite different in purpose and effect from a
jury verdict involving a different plaintiff in a different case.
Moreover, the authorities Welch cites from other circuits for her
contention that EEOC determinations are "generally not admitted",
see, e.g., Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 927 (7th
Cir. 2000), are not in line with Fifth Circuit authority on the
subject.  See Eason v. Fleming Cos., Inc., No. 92-1390, 1993 WL
13015208, at *3 (5th Cir. Aug. 24, 1993) (per curiam) (observing
that "EEOC determinations constitute reports of public agencies
under Rule 803(8)(C) of the Federal Rules of Evidence," and "that
they are generally probative evidence concerning contested issues
in employment discrimination cases"); Faulstick v. Southern Tire
Mart, LLC, Civil Action No. 2:13cv65-KS-MTP, 2014 WL 4055571, at 5
(S.D. Miss. Aug. 14, 2014( ("[T]he Fifth Circuit has found EEOC
investigative reports and files 'to be highly probative' and
provided that Rule 403's balancing test 'should not be misused in
such a way that would end the presumption that evaluative reports
are admissible hearsay under Rule 803(8)(C).'")(quoting Cortes v.
Maxus Exploration Co., 977 F.2d 195, 201 (5th Cir. 1992)).

Jury Instruction Regarding Briana Johnson: Welch contends she

is entitled to a new trial based on the court's error in giving

the following jury instruction, over her objection:

> You have heard testimony of Briana Johnson in this case.
> Briana Johnson's case against All American was tried in
> this courthouse last month resulting in a jury verdict
> and final judgment in favor of All American.  The jury
> found that Ms. Johnson failed to prove that All American
> terminated her because of her pregnancy.  You are not
> permitted to second guess the jury in that case.  You
> should not conclude that Briana Johnson was fired by All
> American because of her pregnancy.  This case is solely
> about Jessica Welch-Jordan's termination.

Welch submits that this instruction unfairly and improperly

prejudiced the jury in favor of All American.  According to Welch,

since Johnson did not claim in her testimony on direct examination

that she was terminated by Nathan Williams because she was

pregnant, the court's instruction was unwarranted and wholly

prejudicial.  In fact, however, Johnson's testimony on direct

could fairly have been interpreted as implying that she believed

she was terminated because she was pregnant, and on cross

examination, as implying that her lawsuit against All American

remained viable.  In light of Johnson's testimony, there was the

risk that the jury in this case might be more likely to find for

Welch if they believed that Johnson had been the victim of

pregnancy discrimination.  The court's instruction was necessary

to ensure the jury herein understood that Johnson's claim had been

finally resolved against her and that they were not to second

guess that decision.  The instruction was accurate, and was not unfairly prejudicial to Welch; and the giving of this instruction does not warrant a new trial for Welch.  See <u>Cozzo v. Tangipahoa Parish Council—President Gov't</u>, 279 F.3d 273, 293 (5th Cir. 2002) (stating that "[b]ecause of the broad discretion afforded district courts in framing the instructions to the jury," judgment may be disturbed on basis of improper instruction "only if the charge as a whole is not a correct statement of the law and does not clearly instruct the jurors regarding the legal principles applicable to the factual issues before them.").

<u>Mischaracterization of Jury Verdict</u>: Welch contends that during her trial, both the court and counsel for All American inadvertently misstated to the jury herein that the jury in Johnson's case had found that Johnson was not terminated because she was pregnant.  Welch notes that the jury in <u>Johnson</u> made no such finding but rather found only that Johnson had *failed to prove* that she was terminated because she was pregnant; and Welch contends that the mischaracterization of the jury's finding in <u>Johnson</u> was "extremely and unavoidably prejudicial," warranting a new trial.

While plaintiff is correct that the court and counsel for All American did mistakenly, albeit inadvertently, state that the Johnson jury had found that Johnson was not terminated on account

of her pregnancy,[9] the jury in this case was correctly instructed
that "[t]he jury found that Ms. Johnson failed to prove that All
American terminated her because of her pregnancy."  Moreover, the
jury had before it testimony based on the jury verdict form and
the jury verdict form itself, from which the jury's finding – that
Johnson had failed to prove her claim of pregnancy discrimination
– was clear.  Considering the record as a whole, it is clear the
jury was not misled.

<u>Testimony of Laura Faulkner and Mandy Hearn</u>: In response to
testimony elicited from Briana Johnson by Welch regarding the
circumstances of Johnson's termination, counsel for All American
objected that Johnson had gone beyond the scope of testimony that
had been represented by counsel and stated that in view of
Johnson's testimony, All American was going to require "two more

---

[9]     Counsel for All American first asked Johnson, "Isn't it
true that a jury found less than a month ago that you were not
terminated because you were pregnant?"  Her next question, though,
was, "Did the jury not find that you failed to prove that you had
been discriminated against on the basis of your pregnancy?"  She
then moved for admission of the jury verdict form, in which the
jury responded "No" to the question, "Has Briana Johnson proved by
a preponderance of the evidence that she was terminated because of
her pregnancy?"  Finally, in closing argument, All American's
counsel stated that the jury verdict in <u>Johnson</u> "has been signed,
sealed and delivered that Ms. Johnson failed to prove by the
evidence that she was terminated because she was pregnant."
    The court, in response to an objection by All American during
Welch's closing argument, stated, *inter alia*, "the jury found
against her (Ms. Johnson), found that she was not discriminated
against on account of her pregnancy."  At the same time, the court
told the jury that it must follow the court's instruction
regarding Briana Johnson's testimony.

witnesses that have not been disclosed in this case," Laura
Faulkner and Mandy Hearn, who would testify about what in fact
happened on Johnson's termination.  Both witnesses were called the
following day and were allowed to testify over Welch's objection.
Welch acknowledges in the present motion that witnesses who are to
be used solely for impeachment do not have to be disclosed prior
to trial, but contends that Faulkner and Hearn cannot properly be
classified as impeachment or rebuttal witnesses since All American
knew that Johnson would testify "regarding the statements and
actions of Nathan Williams" and, anticipating such testimony, was
required to disclose Faulkner and Hearn.  See Quanta Servs. Inc.
v. Am Admin. Grp. Inc., 384 Fed. App'x 291, 295 (5th Cir. 2008)
(finding that a rebuttal or impeachment witness does not have to
be disclosed before trial but "a witness whose purpose is to
contradict an expected and anticipated portion of the plaintiff's
case in chief can never be considered a 'rebuttal witness,' or
anything analogous to one.").  Welch further objects that she
"only received minutes notice as to the calling of these
witnesses, and was therefore, wholly unprepared for the cross
examination of these witnesses."  She complains that without
notice of these witnesses, she had no means by which to have
necessary documents and prior trial transcripts which would be
needed to cross examine them, which prejudiced her and likely
confused the jury.

Welch's suggestion that All American should have anticipated Johnson's testimony about the circumstances of her termination is belied by her own counsel's explicit representation to the court that Johnson would be called as a witness for the sole purpose of relating discriminatory statements made to her by Nathan Williams. Indeed, when an objection was made to Johnson's testimony about her termination, Welch's counsel acknowledged that "what she is talking about now has noting to do with (Williams' pregnancy-related comments)" but claimed that he "just didn't want to stop her, to cut her short."  It would be difficult to conclude that All American should have anticipated this testimony when Welch's own counsel did not.

Furthermore, Welch's assertion that she had "only minutes notice" that Faulkner and Hearn would be called to testify is clearly not accurate.  She knew that these witnesses would be called the day before they testified.  And while she claims that she did not have necessary documents and trial transcripts that she needed to cross examine the witnesses, she has not identified any specific documents to which she lacked access or demonstrated that she could not have obtained access to and/or requested access to specific prior trial testimony, nor has she shown that a lack of access to these materials hampered her ability to effectively cross examine the witnesses in a way that prejudiced her case.

All American's Closing Argument

Welch alleges that, over her objection, All American was permitted to make a "missing witness" argument during closing regarding Eric McCrossen, Welch's former supervisor at All American.  According to Welch, All American argued that the jury should infer from McCrossen's absence that his testimony would have been detrimental to Welch and that was why she did not call him.

The Fifth Circuit "has long recognized that a party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party." U.S. v. Wilson, 322 F.3d 353, 363 (5th Cir. 2003).  "There is, however, an important exception to the applicability of the presumption: if the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible." Id. at 364 n.14 (citing McClanahan v. United States, 230 F.2d 919, 925 (5th Cir. 1956)). In this case, All American initially requested a "missing witness" instruction regarding Eric McCrossen, which the court had indicated it would deny because McCrossen was not under Welch's control.  See United States v. Rios, 636 F.3d 168, 171 (5th Cir. 2011) (stating that "[a] district court should not grant a missing witness instruction unless the individual (1) is peculiarly within

29

one party's power to produce, and (2) would provide testimony that will elucidate facts at issue."). However, All American subsequently withdrew its request for the instruction based on its belief that the missing witness rule is "defunct."

During All American's closing argument, two references were made to Eric McCrossen. The first reference related to testimony by Welch's husband, T.J. Jordan, regarding an alleged phone conversation Mr. Jordan claimed to have heard between Welch and McCrossen. All American's counsel, Mr. Baskind, suggested that Mr. Jordan's testimony that he had listened in on this conversation as a precautionary measure made "no sense," unless one considered that Welch needed to "plug a hole" in her case. Mr. Baskind argued:

> Now, the only reason it does make sense is because the man involved, Eric McCrossen, was not available to testify. So why would we discuss that? Because you have to plug a hole in your case, and Mr. McCrosson is not here, so all of a sudden we have a discussion on a speakerphone, which, by the way –
> ...
> [t]hey had to plug a hole in the case, which is precisely what they did.

Counsel for Welch objected to what he claimed was an "inference that we didn't call McCrossen," stating "[t]hey were just as welcome to call him as we were." The court acknowledged his argument but did not sustain his objection. While Welch asserts in her present motion that Mr. Baskind's argument was an improper "missing witness" argument, in the court's opinion, the argument

30

did not imply that McCrossen, if present, would have testified

adverse to Welch.  Welch's objection is without merit.

In later argument, Mr. Baskind's co-counsel, Ms. Rasmussen,

addressed Eric McCrossen's absence, stating:

> Now, why isn't Eric McCrossen here?  Well, Mrs. Welch
> told you she didn't know.  Up until about 10 days ago,
> they were texting, they were calling on the phone, they
> were having lunch, they were being friends.  I submit to
> you that Eric McCrossen didn't want to come into this
> courthouse and provide you with false testimony, and he
> knew he couldn't help her and all he could do is hurt
> her.  So he just didn't come.  And I submit to you,
> ladies and gentlemen, that that's what happened, because
> obviously by Mrs. Welch's own testimony, she thought
> Eric McCrossen would come up here and testify for her,
> and he didn't do that.

The court notes that when this argument was made at trial,

Welch made no objection.  She now argues that she did not consider

it necessary to do so since the court had already overruled her

earlier objection to defense counsel's argument regarding

McCrossen.  However, the court never purported to rule that a

"missing witness" argument would be permissible.  On the contrary,

the court had previously informed the parties that it did not

consider McCrossen to be a "missing witness" within the

contemplation of the "missing witness" rule.  Moreover, Welch

could not have legitimately considered that her vague objection to

Mr. Baskind's argument – which was not in fact a "missing witness"

argument – would serve as a continuing objection to any subsequent

improper "missing witness" arguments.  She may not base her

request for a new trial on improper arguments to which she did not object.  See Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619 (5th Cir. 1988) (finding that the plaintiff's failure to object to impropriety of closing argument barred it "'from urging the improper arguments as grounds for a new trial after the jury had returned its verdict'") (quoting Computer Sys. Eng'q, Inc. v. Qantel Corp., 740 F.2d 59, 69 (1st Cir. 1984)); see also EON Corp.IP Holdings, LLC v. Landis+Gyr Inc., Civ. Action No. 6:11-CV-317-JDL, 2014 WL 6466663, at *3 (E.D. Tex. Nov. 14, 2014) (finding that defendant "waived its opportunity to object to the alleged impropriety of EON's closing arguments when it remained silent and let the case go to the jury") (citing Nissho-Iwai).

Even if Welch had objected to the argument, relief would not be warranted.  First, Ms. Rasmussen's argument does not qualify as an improper "missing witness" argument.  While Ms. Rasmussen did point to McCrossen's absence, she did not in any way suggest that Welch had failed to call him as a witness or that Welch was in any way responsible for his absence.  On the contrary, she indicated that Welch had wanted McCrossen to appear at trial to testify for her and that Welch, in fact, had intended and expected that he would come and testify for her.  Ms. Rasmussen's argument was merely speculation that McCrossen chose not to appear because he did not want to provide unfavorable testimony, and was not objectionable as an improper "missing witness" argument.

Further, even if Ms. Rasmussen's argument improperly implied that McCrossen qualified as a "missing witness," that alone would not warrant the granting of a new trial.  The Fifth Circuit has held that "[e]ven if remarks are deemed improper and a trial judge's response is deemed inadequate, a new trial will not be granted unless, after considering counsel's trial tactics as a whole, the evidence presented, and the ultimate verdict, the court concludes that 'manifest injustice' would result by allowing the verdict to stand."  Johnson v. Ford Motor Co., 988 F.2d 573, 582 (5th Cir. 1993); see also Johnson v. Watkins, 803 F. Supp. 2d 561, 583 (S.D. Miss. 2011) (recognizing that "invoking the 'golden rule' or making other improper closing statements warrants a new trial 'only if the opposing party shows that it was sufficiently prejudiced considering all the facts and circumstances of the case.') (quoting Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 180 (5th Cir. 2005)).  Welch acknowledges that the alleged improper argument, by itself, would not support the granting of a new trial.  He merely argues that the improper argument, when considered in combination with other alleged errors – namely the admission of evidence relating to the Johnson case and the court's prejudicial instruction regarding Briana Johnson – was overwhelmingly and unfairly prejudicial and supports her request for a new trial.  This argument fails, however, as the court has

33

rejected every other basis urged by Welch in support of her request for a new trial.

Conclusion

Based on all of the foregoing, it is ordered that plaintiff's motion for a new trial is denied.

SO ORDERED this 2nd day of July, 2015.


                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE